UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MATERIAL HANDLING SYSTEMS, INC.,

        Plaintiff,

    v.

RACK MEN EQUIPMENT COMPANY, INC.,

        Defendants.

AND RELATED COUNTERCLAIMS.

No. 2:23-cv-1089 WBS SCR

MEMORANDUM AND ORDER RE: PLAINTIFF AND COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

----oo0oo----

       The instant action concerns a trademark dispute.  The dispute began on June 7, 2023, when plaintiff Material Handling Systems, Inc., ("MHS") filed a complaint seeking declaratory relief stating that its mark, an image of a man in a superhero costume with the words "Rack Man!", did not infringe upon

defendant Rack Men Equipment Company, Inc. ("Rack Men")'s mark, a black-and-white, triangle-shaped graphic of the words "Rack Men." (See Docket No. 1.)  Rack Men subsequently filed an answer and counterclaims, in which it alleges trademark infringement and dilution claims under the Lanham Act and California law and an unfair competition claim under California law.  (See Docket No. 8.)

MHS initially moved to dismiss Rack Men's counterclaims (Docket No. 21), which motion this court denied (Docket No. 29). Presently before the court is MHS's motion for summary judgment. (See Docket No. 29 at 2-3.)  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court provided an overview of the factual circumstances of this dispute in its prior order denying MHS' motion to dismiss.  Additional, undisputed facts are discussed as necessary in the following analysis.

I.   Laches

MHS argues that Rack Men's trademark infringement claims under both the Lanham Act and California law and unfair competition claim under California law are barred by laches. (See Docket No. 51-1.)  Because "[t]he Lanham Act contains no explicit statute of limitations," and because "the equitable nature of Lanham Act remedies" suggests that "laches is the more appropriate defense than the statute of limitations," laches

2

provides the sole delay-based defense against Lanham Act claims. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 836-37 (9th Cir. 2002) (citation modified) (further noting that a "statute of limitations defense might be unavailable due to the equitable nature of [Lanham Act] claims").

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." Id. at 836. "It is well established that laches is a valid defense to Lanham Act claims," id. at 835, "as well as to California state law claims" such as trademark infringement and unfair competition, Fitbug Ltd. v. Fitbit, Inc., 78 F. Supp. 3d 1180, 1186 (N.D. Cal. 2015).

Courts "analyze the laches defense with a two-step process." La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V., 762 F.3d 867, 878 (9th Cir. 2014). "First, [courts] assess the plaintiff's delay by looking to whether the most analogous state statute of limitations has expired. If the most analogous state statute of limitations expired before suit was filed, there is a strong presumption in favor of laches. That presumption is reversed, however, if the most analogous state statute of limitations expired after suit was filed." Pinkette Clothing, Inc. v. Cosm. Warriors Ltd., 894 F.3d 1015, 1025 (9th Cir. 2018) (citations omitted).

"The district court then must balance the following six factors to determine whether the trademark owner's delay in filing suit was unreasonable and, therefore, barred: '(1)

3

strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief is denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by the junior user because of senior user's delay.'" Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n, 465 F.3d 1102, 1108 (9th Cir. 2006) (quoting E-Systems, Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir. 1983)). These six factors are often referred to as the "E-Systems factors." See, e.g., Pinkette Clothing, 894 F.3d at 1025.

    a.   Step One:  Analogous State Statute of Limitations

"The parties agree that the most closely analogous state-law limitation period is the four-year period for trademark-related claims in the State of California." (Docket No. 53 at 16); see also, e.g., Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 990 n.2 (9th Cir. 2009) (agreeing with parties that four-year limitations period from California trademark infringement law was appropriate in similar action).

Critically, "the limitations period runs from the time the plaintiff knew or should have known about his [Lanham Act] cause of action." Jarrow, 304 F. 3d at 838. "This standard can be satisfied by either actual or constructive knowledge, because "'[c]ompanies expecting judicial enforcement of their marks must conduct an effective policing effort.'" Fitbug, 78 F. Supp. 3d at 1186 (quoting Grupo Gigante SA De CV v. Dallo & Co Inc., 391

F.3d 1088, 1092 (9th Cir. 2004)) (alterations in original).

The pertinent, undisputed facts regarding this aspect of the laches doctrine are as follows.  MHS has been in operation since 2002 and is based in Sacramento, California.  (Docket No. 53-4 at 2.)  In 2011, MHS developed and began to display the "Rack Man!" mark on its Facebook account; four years later, MHS began to display that same mark on at least six billboards located on major freeways through and within Sacramento.  (Docket Nos. 59-1 at 12, 59-2 at 6.)  Later, on approximately July 12, 2019, MHS purchased and began to utilize the URL www.rackman.com, to which it redirected its prior website.  (Docket Nos. 59-1 at 11, 12; 53 at 22.)

Rack Men does not dispute that it has utilized the internet, including search engines such as Google, since 2000 to "continually search for potential trademark infringement of its alleged mark."  (Docket No. 59-2 at 9.)  Yet, Rack Men did not make any effort to assert any claims against MHS until after MHS filed the instant declaratory relief action in June 2023.  (See Docket Nos. 1, 8.)

Rack Men argues that the limitations period did not begin to run until November 16, 2020, because that is the date on which a long-time customer allegedly contacted Rack Men with a link to www.rackman.com (by then, MHS' website) and inquired about a product available via that link.  (See Docket No. 53 at 7, 16-17.)  Put differently, Rack Men argues that the limitations period began to run on November 16, 2020, because that is the date on which Rack Men received actual knowledge of MHS'

activities.  (See id.)  However, as Rack Men concedes, MHS need not demonstrate actual knowledge to prove when the limitations period began to run because the limitations period began to run when Rack Men had constructive knowledge of MHS' activities.  See Jarrow, 304 F.3d at 838.

Rack Men attempts to dispel constructive knowledge by disclaiming any knowledge of MHS' billboards or other advertising in the Sacramento region, emphasizing that it is a Georgia-based company (Docket No. 53 at 20).  However, Rack Men simultaneously attests that it had been operating and marketing within the Sacramento region since 2011 (Docket No. 59 at 8).  Given that, since 2011, MHS had been "selling similar [items] in the same geographic area under a remarkably similar name" as Rack Men, a "prudent business person should have recognized the likelihood of confusion" long before 2020.  Fitbug, 78 F. Supp. 3d at 1188.

Rack Men also argues that laches does not bar its counterclaims against MHS because MHS "progressively encroache[d]" on Rack Men's mark "over time."  Grupo Gigante, 391 F. 3d at 1103.  Under the doctrine of progressive encroachment, Rack Men "need not sue in the face of de minimis infringement by the junior user"; rather, Rack Men "may wait until the junior user of the mark moves into direct competition . . . selling the same product through the same channels and causing actual market confusion."  Tillamook, 465 F.3d at 1110 (9th Cir. 2006) (quotations omitted).

"Common methods of encroachment are the junior user's expansion of its business into different regions or into

6

different markets." Id.  But "[a] junior user's growth of its existing business and the concomitant increase in its use of the mark do not constitute progressive encroachment." Id.

Progressive encroachment is inapplicable here.  The behaviors Rack Men points to as evidence of progressive encroachment -- "increasingly, and substantially identifying itself using the 'Rack Man' name," "acquir[ing] the www.rackman.com website," and attending trade shows (Docket No. 53 at 22-23) – constitute "growth of [MHS'] existing business and the concomitant increase in the use of the ["Rack Man!"] mark," which the Ninth Circuit expressly held in Tillamook to "not constitute progressive encroachment," 465 F. 3d at 1110 (emphasis added).

Rack Men did not bring any claims against MHS until after MHS filed the instant action for declaratory relief in June 2023.  Because the limitations period had long expired by June 2023, and progressive encroachment is inapplicable, "the presumption is that laches . . . bar[s]" Rack Men's claims. Jarrow, 304 F.3d at 837 (collecting cases).[1]

---

[1]  Rack Men repeatedly points to the protracted illness and subsequent death of its founder, Mr. John Spang, to argue that its delay in filing suit should be excused.  (See Docket No. 53 at 24-25.)  Mr. Spang was apparently the individual tasked with monitoring for potential trademark infringement.  (See Docket No. 59 at 13.)  While the court is sympathetic to and does not wish to downplay the severity of his illness and death, "'illness' is not typically recognized as a reasonable excuse in the laches context."  See FMC Corp. v. Guthery, No. A:07-cv-5409 JAP, 2009 WL 1033663, at *4 (D.N.J. Apr. 17, 2009) (collecting cases). Moreover, the undisputed facts demonstrate that Mr. Spang should have known of MHS' use of the "Rack Man!" mark long before his illness and subsequent death on October 20, 2022.  (See Docket Nos. 59 at 13; 53 at 24.)

7

b.     Step Two:   The E-Systems Factors

"Despite the presumption in favor of laches and [Rack Men's] inability to show progressive encroachment, the Court must still weigh [the E-Systems] factors to determine whether [Rack Men's] delay in bringing suit was reasonable."  Fitbug Ltd., 78 F. Supp. 3d at 1193.

The first factor weighs in favor of MHS.  Rack Men's mark -- the "Rack Men" name -- is "[d]escriptive or suggestive" and correspondingly "relatively weak."  Grupo Gigante, 391 F. 3d at 1102.  Put differently, the "Rack Men" name is "merely suggestive of the goods produced by" Rack Men -- shelving and racking structures -- and is "therefore not inherently strong." See Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1536 (9th Cir. 1989).  Rack Men provides no evidence, such as that of "marketplace recognition" or a "length[y]" period of "exclusive use" of its mark, that could cause this factor to sway in its direction.  See Harman Int'l Indus., Inc. v. Jem Accessories, Inc., 668 F. Supp. 3d 1025, 1041 (C.D. Cal. 2023), aff'd, No. 23-55774, 2024 WL 4750497 (9th Cir. Nov. 12, 2024).

The second factor also weighs in favor of MHS.  As the undisputed facts establish, MHS began utilizing the "Rack Man!" mark through various media in 2011, but Rack Men did not bring any claims challenging that usage until after MHS filed the instant action for declaratory relief in June 2023.  Rack Men points to the fact that it sent one cease-and-desist letter to an infringing company in Texas in 2002 to demonstrate its diligent

8

enforcement efforts (Docket No. 53 at 29), but this argument harms Rack Men because it evinces that Rack Men has long possessed the ability to identify and enforce its mark outside of Georgia but chose not to do so in this instance.

The third factor, too, weighs in favor of MHS.  In the decade-plus since MHS commenced its allegedly infringing behavior, Rack Men has pointed to only a single instance of a customer mistakenly contacting them with a link to MHS' website www.rackman.com in attempt to purchase a product displayed on that website.[2]  (Docket No. 53 at 7-8.)  As MHS notes, "Rack Men has identified no lost sales, no diverted customers, . . . no lost contracts," and "no damages of any kind."  (Docket No. 59 at 28.)  Thus, the court cannot identify any harm that would accrue to Rack Men were it to deny relief.

The fourth factor unfolds no differently.  To determine whether a junior user acted in bad faith in adopting a mark, courts examine whether that user had "actual awareness" of the senior user's usage of the mark and, "most importantly," whether the junior user "sought to free-ride on [the senior user's] good will or otherwise take advantage of the similarity between the two companies' marks."  Harman, 668 F. Supp. 3d at 1043

---

[2]   Further, such an isolated instance is legally insufficient to demonstrate harm in the form of customer confusion because, as Rack Men itself states, the identified customer meant to, and did, e-mail Rack Men, not MHS. (Docket No. 53 at 7-8.)  Cf. e.g., Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc., 402 F. Supp. 3d 902, 910 (C.D. Cal. 2019) ("[M]isdirected communications" are generally not evidence of actual confusion." (quotations omitted)).

9

(collecting authorities).  This requirement of "actual knowledge" is more stringent than that of the "constructive knowledge" sufficient to trigger the limitations period.  See Jarrow, 304 F.3d at 838.

Although Rack Men claims that its registration of the "Rack Men" mark provided MHS with "constructive knowledge" sufficient to establish bad faith as a matter of law (Docket No. 53 at 30), it cites no authority supporting this proposition of dubious legal significance that falsely equates "constructive knowledge" with the "actual awareness" required to demonstrate bad faith, Harman, 668 F. Supp. 3d at 1043.  And as Rack Men has nowhere evidenced that MHS in any way sought to capitalize on its good will via usage of the "Rack Man!" mark, see Harman, 668 F. Supp. 3d at 1043, this factor also weighs in favor of MHS.

The fifth factor, competition between the junior and senior user, is the only factor that tends to favor Rack Men. Both MHS and Rack Men sell racking and shelving equipment in California.  (Docket No. 53-4 at 36, 39-40).  Although the parties dispute the extent of Rack Men's sales in California (see id. at 39-40) and, by extension, the degree to which they compete, the undisputed facts establish that they compete with each other in some capacity.  That said, however, this factor weighing in favor of Rack Men is "insufficient to sway the overall weight of the factors."  Fitburg, 78 F. Supp. 3d at 1194.

The sixth factor strongly favors MHS.  MHS "has continued to build a valuable business around its trademark during the time that [Rack Men] delayed the exercise of its legal

10

rights," so it has suffered "expectation" or "economic prejudice." Id. (quotations omitted). Indeed, MHS has "provided substantial evidence detailing its efforts through the period of [Rack Men's] delay to build its business," id., by way of "advertising and marketing tied through the Rack Man! Identity from 2011 through . . . 2023" in the "absence of any challenge" (Docket No. 51-1 at 33). Prejudice to MHS would be "severe" if it "were to now lose the rights" to the "Rack Man!" name. Fitburg, 78 F. Supp. 3d at 1194.

Accordingly, considered together, the E-Systems factors weigh strongly in favor of MHS. That being the case, the court finds that defendant's Lanham Act trademark infringement, state-law trademark infringement, and state-law unfair competition claims are barred by laches.

II.  Conclusion

Having found that laches bars Rack Men's Lanham Act trademark infringement, state-law trademark infringement, and state-law unfair competition claims, and there being no remaining avenue for asserting those claims, the court finds that MHS' mark does not infringe upon Rack Men's mark.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Docket No. 51) be, and the same hereby is, GRANTED.

Pursuant to plaintiff's complaint seeking declaratory relief (Docket No. 1), the court DECLARES the following:

1.   Rack Men Equipment Company, Inc. does not have exclusive usage of the word "Rack."

11

2.   Material Handling Systems, Inc.'s actions and usage of the "Rack Man!" mark, alone or in combination, do not and have not infringed upon Rack Men Equipment Company, Inc.'s claimed trademark rights.

3.   Material Handling Systems, Inc. is not liable to Rack Men Equipment Company, Inc. for trademark infringement.

4.   Rack Men Equipment Company, Inc.'s Lanham Act and state-law trademark infringement claims against Material Handling Systems, Inc. are barred by the doctrine of laches.

5.   Rack Men Equipment Company, Inc.'s remaining state and common-law claims are barred by the applicable state statutes of limitations.

IT IS FURTHER ORDERED that judgment be entered against defendant Rack Men Equipment Company, Inc., on its claims against plaintiff Material Handling Systems, Inc. on the above-described bases.

JUDGMENT SHALL BE ENTERED ACCORDINGLY.[3]

---

[3]   The parties filed three requests to seal various documents. (Docket Nos. 52, 58, 60.)  However, they provide no compelling reasons to grant those requests, and the court sees no reason to do so.  The parties' requests to seal (Docket Nos. 52, 58, 60) are therefore DENIED.

Defendants also raised several evidentiary objections in their opposition.  (See Docket No. 53.)  This court has explained numerous times that such objections are duplicative of the summary judgment standard and are redundant.   See Sandoval v. Cnty. of San Diego, 985 F.3d 657, 665 (9th Cir. 2021) ("[O]bjections for relevance are generally unnecessary on summary judgment because they are "'duplicative of the summary judgment standard itself.' ... [P]arties briefing summary judgment motions would be better served to 'simply argue' the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections.")

12

Dated:   March 10, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

(citing Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (Shubb, J.)).  Those objections are accordingly OVERRULED.